IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MICHAEL F. LAFORGE,<br><br>                   Plaintiff,<br><br>vs.<br><br>JANICE GETS DOWN, NATASHA J.<br>MORTON, LEROY NOT AFRAID,<br>SHEILA WILKINSON NOT<br>AFRAID,<br><br>                   Defendants. | CV 17-48-BLG-BMM-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS OF<br>UNITED STATES<br>MAGISTRATE JUDGE** |

Before the Court are six pending motions:

(1)     Defendant Natasha Morton's (Morton) Motion to Dismiss for Failure to State a Claim (Doc 11);

(2)     Plaintiff Michael LaForge's (LaForge) Motion Submit [sic] Support of Pleading Evidence (Doc. 13);

(3)     LaForge's Motion to File Exhibits (Doc. 14);

(4)     Morton's Motion to Dismiss for Lack of Prosecution (Doc. 16);

(5)     Defendants Leroy Not Afraid's and Sheila Wilkinson Not Afraid's (collectively, the "Judicial Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 20); and

(6)     LaForge's Motion for Prayer for Relief (Doc. 24).

After fully considering the parties' motions, the Court makes the following findings and recommendations.

## I.   Pertinent Facts

When considering motions to dismiss, a court must accept as true all well-pleaded allegations of material fact and construe them in the light most favorable to the nonmoving party. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). The Court also may consider materials attached to the complaint or incorporated by reference. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Accordingly, the Court sets forth the facts as alleged in LaForge's Complaint, and as derived from certain materials incorporated therein by reference.

LaForge, proceeding *pro se*, filed his Complaint on May 5, 2017, seeking relief against defendants for "judgment of property" occurring July 12, 2016, which LaForge describes as "[r]emoving my home (modular home) from my trust land." (Doc. 9 at 7.) Judge Morris, in his order granting LaForge permission to proceed *in forma pauperis*, interpreted LaForge's Complaint as alleging "that Defendants, a number of Crow Tribal Court officials, wrongfully entered judgment to remove his modular home from his trust land." (Doc. 8 at 2.) LaForge cites as the basis for federal jurisdiction "Constitutional Rights, Disability Act, Treaty Rights, and Civil Rights," though he does not cite to any particular constitutional provision or statute. (Doc. 9 at 6.)

2

Upon review of documents LaForge has filed since his Complaint (*see,* e.g., Docs. 14 & 15), it is clear that the "judgment of property" about which LaForge complains is a divorce decree entered by the Crow Tribal Court in and for the Crow Indian Reservation (the "Tribal Court"), dividing property between LaForge and his ex-wife, Defendant Janice Gets Down ("Gets Down").  (Doc. 15-2 at 1-7.) LaForge unsuccessfully appealed that decree pursuant to Tribal Court procedures, with final judgment against LaForge being entered on April 7, 2017.  (Doc. 21-1 at 63-64.)

LaForge initiated this action on April 21, 2017.  According to his subsequent "Motion for Prayer for Relief," he requests that he be awarded certain property from the divorce action, consisting of motor vehicles, an RV trailer, a trailer home, and that he also be awarded a total of $70,000,000 in "punitive" and "monetary damages" from the defendants.  (Doc. 24.)

Defendant Morton filed the first of the instant motions on June 6, 2017. (Doc. 11.)  The final pending motion was filed by LaForge on July 25, 2017. (Doc. 24.)  As described above, there are a total of six pending motions.  On November 3, 2017, with no party having filed a response to any pending motion,[1] the Court entered an Order requiring the parties to show cause why the Court should not deem the motions to be well-taken pursuant to D. Mont. L.R.

---

[1] Defendant Gets Down has not appeared in this case.

7.1(d)(1)(B)(ii).  (Doc. 26.)

Morton and the Judicial Defendants filed responses to the Court's Order. (Doc. 27, 28.)  LaForge filed a document on the date his show-cause response was due, but that document, entitled "Brief," neither addresses the Court's Order nor responds to any issues discussed in defendants' dispositive motions.  (Doc. 29.)

## II.   Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss.  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to

4

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679.

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *Ritchie*, 342 F.3d at 907; *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). However, the Court also may consider documents attached to the pleadings, and may consider documents

incorporated into the pleadings by reference. *Ritchie*, 342 F.3d at 908.  Documents

may be incorporated by reference into the pleadings where "(1) the complaint

refers to the document; (2) the document is central to the plaintiff's claim; and (3)

no party questions the authenticity of the document." *Corinthian Colleges*, 655

F.3d at 999.

## III.    Discussion

LaForge's Complaint does not identify any particular statutes, treaties, or

constitutional provisions on which he relies.  His Complaint also does not include

any facts to shed light on what Defendants allegedly did to cause LaForge harm.

Even considering the pleadings he submitted after the filing of his Complaint,[2]

LaForge only alleges that the Defendants caused him "distress and mental and

physical stress" while he was undergoing cancer treatment because of the removal

of a modular home from his trust property.  (Doc. 13.)  These allegations neither

identify a cognizable legal theory, nor allege sufficient facts to support a

cognizable legal claim.  Therefore, LaForge has clearly failed to state a plausible

claim for relief, and his Complaint is subject to dismissal.

---

[2] Following the filing of Morton's motion to dismiss, LaForge filed several
pleadings which more fully revealed the source of his present complaint. *See*
"Motion Submit [sic] Support of Pleading Evidence (Doc. 13); "Motion to File
Exhibits (Doc. 14); various documents filed under seal including Tribal Court
documents from the underlying divorce proceeding (Doc. 15); and Motion for
Prayer for Relief (Doc. 24).

But that does not end the inquiry.  If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

This is particularly true with respect to *pro* se litigants.  Courts have an obligation where the petitioner is *pro se,* particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt. *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  In fact, "before dismissing a *pro se* complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992) (citing *Noll v. Carlson,* 809 F.2d 1446, 1448-49 (9th Cir. 1987), *superseded on other grounds by statute as stated in Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000) (*en banc*)).  A district court should not dismiss a *pro se* complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood,* 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam) (internal quotation marks omitted)

Therefore, construing LaForge's Complaint liberally, the Court has identified the following potential claims from the bare allegations of LaForge's Complaint:

i.      A claim under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), with respect to the constitutional and civil rights claims[3];

ii.     A claim under the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101, *et seq*.), with respect to the "Disability Act" claim; and

iii.    A treaty violation.

The Court will discuss these potential claims in connection with the Defendants' motions to dismiss.

**A.    Claims Against Morton**

Morton served as attorney for Gets Down in the underlying divorce action. (Docs. 9 at 4; 12 at 6.)  Morton has moved to dismiss LaForge's claims against her. (Doc. 11.)  As to LaForge's civil rights and constitutional rights claims, Morton

---

[3] In some circumstances, civil rights suits also may be maintained against Indian tribes pursuant to the Indian Civil Rights Act of 1968 ("ICRA") (25 U.S.C. § 1301, *et seq*.), but the Ninth Circuit has recognized that the Supreme Court "foreclosed any reading of the [ICRA] as authority for bringing civil actions in federal court to request forms of relief other than habeas corpus."  *R.J. Williams*, 719 F.2d at 981 (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56-57 (1978)).  Whatever else can be said of LaForge's Complaint, it is clear that it does not request habeas corpus relief, and therefore the ICRA can have no application here.

maintains that she cannot be liable under 42 U.S.C. § 1983, because she was not acting under color of state law in her representation of Gets Down.  (Doc. 12 at 6-7.)  She also contends that she cannot be liable under the Americans with Disabilities Act (ADA), because she is not a "public entity" subject to Title II of the ADA.  (*Id*. at 7.)  LaForge has not responded to Morton's motion to dismiss in any meaningful way.

### i.      Civil & Constitutional Rights

LaForge's Complaint does not identify any particular civil or constitutional rights violation, nor does it indicate what Morton (or any other defendant) did to violate LaForge's civil rights.  Nevertheless, 42 U.S.C § 1983 "creates a civil cause of action against a person who, under color of any statute, ordinance, regulation, custom, or usage, of any State deprives another person of any of their rights, privileges, or immunities secured by the Constitution and laws."  *Gates v. Alameda County Sheriff's Dept.*, 2012 WL 3537040, *3 (N.D. Cal. Aug. 14, 2012).  "In order to state a claim for damages under § 1983, a complaint must allege that (1) 'the conduct complained of was committed by a person acting under color of state law,' and that (2) 'this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'"  *Id*., quoting *Parratt v. Taylor*, 451 U.S. 527, 535, (1981) (overruled on other grounds).  *Bivens* provides the same remedy against a federal official acting under color of federal

law.  *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).  LaForge's Complaint

does not and cannot state a § 1983 or *Bivens* claim for deprivation of any civil or

constitutional right against Morton.

     The Complaint and the "judgment of property" referenced therein identify

Morton as Gets Down's attorney in the underlying divorce proceedings.  (Doc. 9 at

4; 15-2 at 10.)  LaForge has neither alleged nor provided information suggesting

that Morton played any other role in the underlying divorce proceeding.  Even if

LaForge had identified some particular harm Morton visited upon him (which he

has not done), Morton is a private party, and was not, by mere virtue of serving as

Gets Down's divorce attorney, acting under color of state or federal law.  *See e.g.,*

*Polk County v. Dodson*, 454 U.S. 312, 317-319 (1981).  Accordingly, she is not a

person against whom LaForge can assert a § 1983 or *Bivens* claim for deprivation

of any civil or constitutional right.

     The Court, therefore, recommends that Morton's motion to dismiss

LaForge's claim against her for violation of his civil and constitutional rights be

granted.

       **ii.**     **Americans with Disabilities Act**

     LaForge's Complaint is devoid of specific reference to the ADA, or any

indication as to how he believes Morton violated any particular "Disability Act."

Construing LaForge's Complaint liberally, however, the Court infers that LaForge

10

is alleging he was denied full participation in the Tribal Court proceedings due to disability attendant to his cancer diagnosis and associated treatment.  LaForge's ADA claim must therefore be considered under Title II of the ADA, which prohibits discrimination against individuals with disabilities.  *See* 42 U.S.C. §§ 12131-12165.  Specifically, § 12132 of Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

"To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'[4]; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability."  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).  42 U.S.C. § 12131(1) defines "public entity" as "(A) any State or local

---

[4] LaForge's Complaint is devoid of any facts tending to demonstrate that he is a "qualified person with a disability" within the meaning of ADA Title II.  Cancer is not a *per se* disability under the ADA (*see, e.g., Thomsen v. Stantec, Inc.*, 785 F.Supp.2d 20, 23 (W.D. N.Y. 2011)), and LaForge has not alleged that his illness substantially limits one or more major life activities, as required to constitute a disability under the ADA.  42 U.S.C. § 12102(1).  Despite this deficiency, the Court will assume for the purposes of these Findings and Recommendations that LaForge's illness qualifies as a disability.

government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in § 24101(4) of Title 49)."  42 U.S.C. § 12131(2) defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."

LaForge's Complaint fails to state a plausible claim against Morton for relief under the ADA.  First and foremost, LaForge's ADA claim should be dismissed because the Ninth Circuit has foreclosed suits under Title II of the ADA against individual defendants in their individual capacities.  *See Bohnert v. Mitchell*, 2010 WL 4269569, *5-6 (D. Ariz. Oct. 26, 2010) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002)).  Since Morton has no apparent connection to the Tribal Court, other than appearing before it as a private attorney, she is being sued in her individual capacity, and is not subject to suit under the ADA.

Further, it is clear from the definition of "public entity" that LaForge cannot raise a claim against Morton under the ADA.  As explained above, Morton was Gets Down's private attorney, and is not a "public entity" by the above or any

12

definition of the term.

The Court therefore recommends that Morton's motion to dismiss LaForge's ADA claim against her be granted.

### iii.    Treaty Rights

Morton's motion to dismiss does not address the possibility of a claim against her based on "treaty rights."  Nevertheless, the Court can conceive of no private right of action which may arise from a treaty against a private attorney in a tribal court divorce action.  Additionally, LaForge's Complaint sheds no light on the possible basis for his claim, and does not identify any treaty or any provision of any treaty that (a) Defendants allegedly violated, (b) grants him standing to raise a claim based on a treaty violation, (c) could afford him the relief he requests, or (d) could state a valid claim against these Defendants.

Moreover, while it may be possible to bring an action against a non-contracting party to a treaty based on an alleged violation of a treaty, the Ninth Circuit has not recognized the right to recover damages in such an action.  *See, e.g., Skokomish Indian Tribe v. United States*, 410 F.3d 506, 512-14 (9th Cir. 2005) (recognizing a possible right of action for equitable relief against a non-contracting party, but not a right to sue a non-contracting party for damages under a treaty).  LaForge's present action includes a claim against Morton for $35,000,000.00 in

13

damages, which would not be an available remedy even if such a claim was cognizable.  (Doc. 9 at 7; Doc. 24.)

Therefore the Court recommends that any claim LaForge intends to assert against Morton based on "treaty rights" should be dismissed.

### B.      Claims against Not Afraid and Wilkinson Not Afraid

The Judicial Defendants are both Crow Tribal Court Judges.  (Doc. 9 at 4.) The Judicial Defendants have moved to dismiss all claims against them on the basis that (1) the complaint fails to state any jurisdictional basis for the Court's review of the Tribal divorce proceeding; (2) judicial immunity bars LaForge's claims against the Judicial Defendants individually; and (3) sovereign immunity bars any claims against them in their official capacities.  (Doc. 21 at 8-11.) LaForge has not addressed these issues in any of his various pleadings.

While LaForge's Complaint against the Judicial Defendants ultimately may be subject to dismissal on the same bases as his claims against Morton, his claims against the Judicial Defendants are further barred by judicial immunity and sovereign immunity.

It is unclear from LaForge's Complaint whether he intends to bring his action against the Judicial Defendants in their individual or official capacities.  To the extent he intends to bring claims against them in their individual capacities, the claims are barred by judicial immunity.  As Tribal Court judges, the Judicial

14

Defendants enjoy judicial immunity from suit.  "Judges are absolutely immune, under the doctrine of judicial immunity, for acts performed in their judicial capacities." *Ferguson v. U.S. Dist. Court*, 2009 WL 2423440, *1 (D. Mont. Aug. 3, 2009); *see also Penn v. U.S.*, 335 F.3d 786, 789 (8th Cir. 2003) ("[A] tribal court judge is entitled to the same absolute judicial immunity that shields state and federal court judges.").  LaForge has identified the Judicial Defendants as judges on the Crow Tribal Court, and has neither alleged nor presented any facts to suggest that the Judicial Defendants were acting outside the scope of their judicial authority when they entered orders and judgment in the underlying divorce.  The Judicial Defendants are, therefore, immune from the instant lawsuit, which seeks damages against them for actions they took in their judicial capacities.

To the extent LaForge intends to bring these claims against the Judicial Defendants in their official capacities, the claims are barred by the Tribe's sovereign immunity.  "Indian tribes are neither states, nor part of the federal government, nor subdivisions of either." *N.L.R.B. v. Pueblo of San Juan,* 276 F.3d 1186, 1192 (10th Cir. 2002) (*en banc*).  Unless Congress authorizes the suit or sovereign immunity has been waived, Indian tribes, tribal entities, and persons acting on tribes' behalf in an official capacity enjoy sovereign immunity against suit.  *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) (tribe); *Allen v. Gold Country Casino,* 464 F.3d 1044,

1046 (9th Cir.2006) (tribal entity); *Hardin v. White Mountain Apache Tribe,* 779

F.2d 476, 479-80 (9th Cir. 1985) (tribal officials).  "Absent congressional

abrogation or explicit waiver, sovereign immunity bars suit against an Indian tribe

in federal court."  *Burlington Northern & Santa Fe Ry. Co. v. Vaughn,* 509 F.3d

1085, 1091 (9th Cir.2007) (citing *Kiowa Tribe of Okla*, 523 U.S. at 754).  "This

immunity protects tribal officials acting within the scope of their valid authority."

*Id.* (citing *Hardin*, 779 F.2d at 479-80).

LaForge does not argue – and the Court has not located any authority

suggesting – that the Crow Tribe has waived sovereign immunity for suits based

upon violation of constitutional or civil rights, ADA Title II suits, or for private

actions based upon treaty rights, or that Congress has authorized such private rights

of action against the Tribe.  *See Krystal Energy Co. v. Navajo Nation*, 357 F.3d

1055, 1056 (9th Cir. 2004) (holding that abrogation of tribal sovereign immunity

"must be unequivocally expressed in explicit legislation" and "may not be

implied").  Thus, to the extent LaForge intends to sue the Crow Indian Tribe

through officials acting in their official capacities, those claims are barred by the

doctrine of sovereign immunity.

### C.    LaForge's Motions

LaForge's motions (Docs. 13, 14, 24), construed liberally, appear to be

efforts to supplement his Complaint with additional documentation and additional

requested relief.  Nothing in these motions resolves the defects in LaForge's Complaint discussed above.

The Court finds that LaForge's motions (Docs. 13, 14, 24) should be construed as motions to amend his Complaint, and recommends that the motions be granted.  The motions do not seek to add any claims against the Defendants, and the Court finds that Defendants will not be prejudiced by any clarifications in the damages LaForge is seeking or with respect to his legal theories.

## IV.    Conclusion

For the foregoing reasons, the undersigned recommends that all claims against Morton and the Judicial Defendants be dismissed.  Recognizing, however, the general principle that a *pro se* complaint should not be dismissed without leave to amend unless it is absolutely clear that amendment would not cure the deficiencies, the dismissal should be without prejudice and with leave to amend.  It is also recommended, however, that LaForge be warned that failure to correct the deficiencies identified herein in any amended pleading will result in dismissal of his case with prejudice.  *Ferdik*, 963 F.2d at 1261.

Based on the foregoing, **IT IS RECOMMENDED** that:

(1)    The Court deem LaForge's "Motion Submit Support of Pleading Evidence" (Doc. 13), "Motion to File Exhibits" (Doc. 14), and "Motion for Prayer for Relief" (Doc. 24) as motions to amend his Complaint, and grant said motions;

(2)     The Court grant the Defendants' motions to dismiss for failure to state a claim (Docs. 11 & 20), without prejudice and with leave to amend; and

(3)     The Court deny as moot Morton's motion to dismiss for failure to prosecute (Doc. 16).

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

DATED this 28th day of December, 2017.


_____
TIMOTHY J. CAVAN
United States Magistrate Judge